IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

FRANK LEE FRANKLIN                                                    PETITIONER
ADC #087441

V.                                    NO. 5:10-cv-00066 SWW-JWC

RAY HOBBS, Director,                                                 RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
## INSTRUCTIONS

The following recommended disposition has been sent to United States District

Judge Susan Webber Wright.   Any party may serve and file written objections to this

recommendation.   Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that finding

and the evidence that supports your objection.  An original and one copy of your objections

must be received in the office of the United States District Court Clerk within fourteen (14)

days after being served with the findings and recommendations.  The copy will be furnished

to the opposing party.  Failure to file timely objections may result in waiver of the right to

appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,

or additional evidence, and to have a hearing for this purpose before the District Judge, you

must, at the same time that you file your written objections, include a "Statement of

Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the District
        Judge was not offered at a hearing before the Magistrate Judge.

3.    An offer of proof stating the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

Frank Lee Franklin, an Arkansas Department of Correction (ADC) inmate, brings this 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging a prison disciplinary decision.  Respondent filed a response and supporting exhibits (doc. 11). Although notified of his opportunity to reply (doc. 12), Petitioner did not do so.  For the reasons that follow, the petition should be **denied**.

I.

Petitioner is serving a cumulative sentence of 416 years in the ADC for multiple convictions, including burglary, criminal attempt to commit rape, and rape.  (Resp't Ex. A [doc. 11-1, at 1-4, 42.)  *See Franklin v. State*, 825 S.W.2d 263 (Ark. 1992); *Franklin v. State*, No. CR 91-98, 1991 WL 249398 (Ark. Sup. Ct. Nov. 18, 1991).

The disciplinary citation at issue here concerns an incident that occurred on July 16, 2009.  The charging officer, Cpl. Lillie M. Garrett, stated that, when a prison guard (Cpl. Adkins) was escorting other personnel (Nurse Harris and Nurse Goodman) into the unit at

approximately 2:13 p.m. on that date, Cpl. Garrett observed Petitioner exposing himself in front of his cell door and he failed to obey orders to stop.  Petitioner was charged with violation of ADC Rule 12-1 (failure to obey staff order), and Rule 10-3 (indecent exposure). (Resp't Ex. B [doc. 11-2, at 1, 2, 5, 6].)

On July 17, 2009, at 12:06 p.m., Petitioner was notified of the disciplinary charge, and he was given the opportunity to identify witnesses on his behalf.  He listed Nurse Goodman, Nurse Harris and Cpl. Adkins.  (*Id.* at 2.)  A disciplinary hearing was held on July 27, 2009.  The hearing officer's report stated that he reviewed "all of the evidence," which consisted of statements from the charging officer, Petitioner, and his witnesses.  (*Id.* at 3-10.)  Petitioner said he was not guilty of both charges and gave the following statement:

> The disciplinary have been over nine days, therefore, the disciplinary has expired.  Ms. Garrett say I was standing in the doorway.  You know how those barracks are, if I was in the doorway those other people would have saw me.  She said I was stroking it in a back and forward motion.  In other words I was masturbating.  I had a sheet up and I didn't take it down.  I am almost to go home.  I wouldn't do anything to jeopardize that.

(*Id.* at 3.)  Goodman's signed witness statement stated that she did not see what the officer observed because she had her back turned.  (*Id.* at 8.)  An investigating officer stated that, per a conversation with Harris, she did not see anything either.  (*Id.* at 9.)  The investigating officer also stated that "per conversation with Cpl. Adkins, disciplinary stands as written." (*Id.* at 10.)  The disciplinary hearing officer found Petitioner guilty on both charges, stating that he was relying on the charging officer's F-1[1] and was accepting the staff report.  (*Id.* at 3-4.)  Petitioner's punishment was thirty days in punitive isolation and a classification

---

[1]This is a reference to the charging officer's report, Major Disciplinary Form F-831-1.  (*Id.* at 2.)

reduction from Class IC to Class IV.  (*Id.* at 3.)  There is no allegation or evidence that he appealed the disciplinary decision through the ADC's administrative channels.

In this action, Petitioner alleges that his disciplinary conviction was obtained by violation of his right to due process under the United States Constitution. He says he called an unspecified witness, but the witness was never notified in accordance with ADC disciplinary policies.  He also alleges that he is being subjected to prejudice and discrimination because the individuals named in this action are "in such a position they can't be avoided on a daily basis."  He asks that he be transferred to another unit where he "can be treated fairly."

## II.

Respondent first argues that, because Petitioner does not challenge the fact or duration of his ADC confinement, his claims are simply challenges to the conditions of that confinement, cognizable only in a 42 U.S.C. § 1983 civil rights action.

"Federal law opens two main avenues to relief on complaints related to imprisonment:" a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a civil rights complaint pursuant to 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004).  The essence of habeas corpus "is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Habeas is thus the exclusive remedy when an attack "goes directly to the constitutionality of [a prisoner's] physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration."  *Id.* at 489.  A civil rights complaint under § 1983, on the other hand, "is a proper remedy for a state prisoner who is making a constitutional

challenge to the conditions of his prison life, but not to the fact or length of his custody."

*Id.* at 499.

Plaintiff's request for a transfer to another unit where he believes he can be treated fairly does not call into question the fact or length of his confinement.  *See Khaimov v. Crist*, 297 F.3d 783, 785-86 (8th Cir. 2002) (finding that habeas petitioner's claims regarding prison mail and segregation were improperly brought under § 2254 because they were not alleged to have illegally extended his period of confinement); *Kruger v. Erickson*, 77 F.3d 1071, 1073-74 (8th Cir. 1996) (dismissing habeas petition for lack of subject matter jurisdiction where prisoner did not "make any colorable allegation that his underlying conviction is invalid or that he is otherwise being denied his freedom from incarceration"). That claim must be dismissed as more appropriately brought in a § 1983 action.

Regarding the disciplinary decision itself, Petitioner previously filed a § 1983 civil rights complaint challenging the decision and alleging that the punitive isolation and classification reduction affected his projected release date[2] and, therefore, the duration of his confinement.  *Franklin v. Cody*, No. 2:09cv00161-BSM-JJV (E.D. Ark. Dec. 3, 2009 [doc. 6]).  The Court construed the § 1983 complaint as seeking a judgment which would invalidate the results of the disciplinary proceeding, restore his class status, and restore good-time credit, and thus held that Petitioner's claims were barred by *Preiser*'s holding that a habeas proceeding is the exclusive remedy for challenging the duration of a prison term.  The § 1983 complaint was dismissed without prejudice.  *Franklin v. Cody*, No.

---

[2]The ADC records submitted in this case show his parole/transfer eligibility date as June 13, 2147.  (Resp't Ex. A [doc. 11-1, at 1].)

2:09cv00161-BSM-JJV, 2010 WL 330348, at *1, *6 (E.D. Ark. Jan. 21, 2010 [docs. 12, 13]). About six weeks later, Petitioner filed this habeas action.

Therefore, Petitioner has already unsuccessfully attempted to pursue a § 1983 complaint regarding this disciplinary decision. In the interest of judicial efficiency, the Court will proceed to Respondent's alternative argument: that Petitioner's due process claims lack substantive merit because no protected liberty interest was at stake due to the disciplinary decision and that, even if any liberty interest was implicated, he was afforded adequate due process protections.

As an initial matter, Petitioner's claim that an internal ADC policy was violated cannot provide a basis for federal habeas relief. A federal court may issue a writ of habeas corpus only for a violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §§ 2241(c), 2254(a). There is no federal constitutional interest in having state officers follow state law or prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Regardless of whether any ADC rules or regulations have been violated, this Court is limited to determining whether a federal violation has occurred.

The Fourteenth Amendment to the United States Constitution, extending the due process protections of the Fifth Amendment, provides in part that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

As stated, the disciplinary hearing report shows that the sanctions imposed on Petitioner were reduction to Class IV and thirty days of punitive isolation. (Resp't Ex. B [doc. 11-2, at 3].) Other ADC records confirm that he forfeited no accrued good time as a

result of the July 27, 2009 disciplinary decision.  (Resp't Ex. A [doc. 11-1, at 19].)  At most, the reduction in classification deprived him of the opportunity to earn future good-time credits.  *See* Ark. Code Ann. § 12-29-202(b)(2) (inmates who are reduced to the lowest class, Class IV, as a result of disciplinary action "shall not be entitled to earn meritorious good time") (2009).  None of these sanctions gives rise to a protected liberty interest under either federal or state law.

The Due Process Clause does not protect prisoners from every adverse change in their confinement and does not, itself, create a protected liberty interest in any particular prisoner classification,  *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); in being free from transfer to "less amenable and more restrictive quarters" in the prison, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); or in good-time credit for satisfactory behavior while in prison, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

Liberty interests arising from state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

*Sandin* expressly recognized that disciplinary action by prison officials in response to a prisoner's misconduct "falls within the expected perimeters of the sentence imposed by a court of law."  *Id.* at 485.  Temporary segregation and restricted privileges as a result of disciplinary infractions are certainly a typical and expected component of prison life, do not "present a dramatic departure from the basic conditions of [an inmate's] sentence," and, in this case, had no effect on the duration of Petitioner's term of confinement.  *Id.* at 485, 487 .  *See id.* at 485-86 (thirty days of disciplinary segregation "did not work a major disruption in [a prisoner's] environment"); *Phillips*, 320 F.3d at 847 (thirty-seven days in

isolation and restricted visitation, exercise and chapel privileges); *Portley-El v. Brill*, 288 F.3d 1063, 1065-66 (8th Cir. 2002) (administrative and disciplinary segregation); *Kennedy v. Blankenship*, 100 F.3d 640, 642-43 (8th Cir. 1996) (thirty days in punitive isolation and restrictions in privileges); *Munson v. Arkansas Dep't of Correction*, 294 S.W.3d 409, 411 (Ark. 2009) (rejecting ADC prisoner's due process claim and holding that subjection to isolation for a period of time as a disciplinary sanction does not show "an atypical and substantive deprivation that was a dramatic departure from the basic conditions of his confinement").

Similarly, adjustments in classification status as a means of punishment, and the consequences of a lower classification level, are not the kind of "atypical and significant" deprivations that create a liberty interest under *Sandin*.  Under the applicable Arkansas statutes, the Board of Corrections is granted broad discretion in prescribing rules and regulations "for the maintenance of good order and discipline" in the state correctional facilities, and in classifying ADC inmates according to "good behavior, good discipline, medical condition, job responsibilities, and involvement in rehabilitative activities."  Ark. Code Ann. §§ 12-29-101, 12-29-103(a), 12-29-202(a)(3).  Inmates may be reclassified "as often as the [classification] committee deems necessary ... to maintain good discipline, order, and efficiency at the units, facilities, or centers."  *Id.* § 12-29-202(c).

In short, nothing in the Arkansas statutes provides a basis for finding a protected liberty interest in the classification level assigned to an inmate by prison officials.  As recently stated by the Arkansas Supreme Court, "Arkansas law commits prisoner classification to the discretion of prison officials and does not protect an inmate's right to any particular classification or raise due-process concerns."  *Crawford v. Cashion*, 2010 Ark. 124, at 7; *see also Sanders v. Norris*, 153 Fed. Appx. 403, 404 (8th Cir. 2005) (unpub.

8

*per curiam*) (ADC inmate has no constitutional right to particular prison classification); *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (ADC inmate has no right to consideration of Class I status); *Strickland v. Dyer*, 628 F. Supp. 180, 181 (E.D. Ark. 1986) (because Arkansas law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification, ADC prisoner could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction); *Munson*, 294 S.W.3d at 411 (loss of class status and its accompanying privileges "would not compromise a liberty interest").

Additionally, a class reduction, with no accompanying loss of accrued good-time credits, did not "inevitably affect" Petitioner's term of confinement under Arkansas law, as contemplated by *Sandin*.  At most, as stated, the reduction in class status denied him the opportunity to earn future good-time credits until he was able to advance out of Class IV status.  Based on their level of classification, ADC inmates may earn up to thirty days of "meritorious good time" for each month of incarceration, thereby reducing an inmate's "transfer eligibility date," *i.e.*, the date he becomes eligible for transfer from the ADC to less restrictive placement or supervision by the Department of Community Correction (DCC). Ark. Code Ann. §§ 12-29-201(a) & (f)(1), § 12-29-202(b)(1), 12-29-204; *see id.* § 16-93-1202(2), (4), (11) & (12) (defining terms regarding transfer eligibility).  Inmates who are reduced to the lowest class (Class IV) as a result of disciplinary action "shall not be entitled to earn meritorious good time."  *Id.* § 12-29-202(b)(2).  All or part of an inmate's accrued good time may be taken away by the ADC for infraction of prison rules.  *Id.* § 12-29-203(a). However, these statutes do not provide an absolute entitlement to good time, stating only that an inmate "*may* be entitled" to meritorious good time, *id.* § 12-29-201(a)(1), and that

an inmate who maintains a high classification "*may* earn" credit toward reduction of his transfer eligibility date, *id.* § 12-29-202(b)(1).

Furthermore, the statutes plainly state that "[m]eritorious good time will not be applied to reduce the length of a sentence," *id.* § 12-29-201(d); and that transfer to DCC supervision "shall not be considered as a reduction of sentence," *id.* § 16-93-1302(d). Therefore, although good time affects the date that an inmate may become eligible for transfer to less restrictive conditions, which may include some form of early release, it has no effect on the length of the sentence imposed by the trial court.

In *McKinnon v. Norris*, 231 S.W.3d 725 (Ark. 2006), the Arkansas Supreme Court rejected a prisoner's claim that the class reduction he received as a disciplinary penalty, which made him ineligible to gain credit for statutory meritorious good time, constituted the deprivation of a state-created liberty interest without due process. *Id.* at 728-30. The court stated: "[M]eritorious good time does not apply to reduce the length of a sentence. ... As a result, Arkansas has not created a liberty interest in good time under the constitutional analysis in *Wolff v. McDonnell.*" *McKinnon*, 231 S.W.3d at 730. The Arkansas Supreme Court has reiterated this interpretation of the relevant statutes on several occasions. *Crawford*, 2010 Ark. 124, at 7 (under Arkansas law, "there is no liberty interest in a prisoner's classification or in the meritorious good time that a prisoner might accrue by virtue of that classification"); *Munson*, 294 S.W.3d at 411 ("A loss of class status and privileges, ... even if impacting good time, would not compromise a liberty interest"); *Koontz v. Norris*, No. 08-75, 2008 WL 2310973, *2 (Ark. Sup. Ct. June 5, 2008) (unpub.) (no due process violation regarding prison disciplinary that resulted in segregation, loss of class status, and loss of good-time credits). The state "retains the authority to interpret the scope

and availability of any state-conferred right or interest." *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997).

Like the inmate in *McKinnon*, there is no evidence that Petitioner lost more than the *opportunity* to earn further good-time credits toward his transfer eligibility date until he was able to advance out of Class IV.  Restricting this ability as a disciplinary sanction is a typical and not unexpected occurrence in the prison environment.  Moreover, because awarding good-time credits is discretionary, only affects an inmate's transfer eligibility date, and does not reduce his sentence, it cannot be said that good-time ineligibility due to reduced class status inevitably affects the duration of an inmate's sentence, as contemplated by *Sandin*. Additionally, as stated, classification decisions are based on a variety of factors, aside from disciplinary penalties, and are subject to frequent adjustment throughout the period of incarceration.  The chance that one class reduction "will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Sandin*, 515 U.S. at 487.   Therefore, Petitioner's demotion to Class IV does not give rise to a protected liberty interest under federal or state law.

Even if Petitioner were able to establish the existence of a protected liberty interest entitling him to procedural protections regarding the disciplinary decision at issue, the record shows that he was afforded adequate process.  To comport with due process where a protected liberty interest exists in connection with a prison disciplinary proceeding, a prisoner must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact-finder and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-67.

Due process also requires that the record contain "some evidence" to support the prison disciplinary decision.  *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).  The relevant question "is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.* at 455 (emphasis added).  This "some evidence" rule allows the federal courts to defer to the judgment of prison officials in maintaining discipline in their institutions while meeting constitutional requirements.  *Id.* at 456.  This limited review by federal courts does not require examination of the entire record, independent assessment of credibility of witnesses, or weighing of the evidence. *Id.* at 455. Prison officials can permissibly rely on conduct violation reports to find inmates guilty of disciplinary infractions.  *Id.* at 456; *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008); *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993).  They may also rely on hearsay. *Moore v. Plaster*, 313 F.3d 442, 444 (8th Cir. 2002).  A report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as "some evidence" upon which to base a prison disciplinary decision, if the violation is found by an impartial decision-maker.  *Hartsfield*, 511 F.3d at 831.

Here, the disciplinary records reflect that Petitioner was notified of the disciplinary charges on July 17, 2009 – one day after the incident, and ten days before the hearing date.   At the disciplinary hearing, Petitioner pleaded not guilty to the charges and was allowed to make a statement.   Statements were obtained from his three requested witnesses.  Petitioner does not identify the name of any other witness that he requested or the substance of any anticipated statement.   The disciplinary hearing officer found Petitioner guilty of all charges.  His written decision recited the factual basis for finding guilt and the evidence relied upon.  He stated that he was accepting the reports of the charging officer and staff over any information purporting to exonerate the inmate.  Petitioner did not

utilize the administrative appeal process, and makes no contention that it was unavailable to him or that he was prevented from doing so.  The procedures afforded to Petitioner were adequate to comport with the requirements of *Wolff* and *Hill*.

III.

For the reasons set forth above, this 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1) should be **denied**, dismissing this case in its entirety with prejudice. Furthermore, a certificate of appealability should be denied, as Petitioner has not made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(1)-(2); Rule 11, Rules Governing § 2254 Cases in United States District Courts.

DATED this 5th day of May, 2011.

_____
UNITED STATES MAGISTRATE JUDGE